United States District Court
Southern District of Texas
**ENTERED**
October 02, 2020
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HARRIET LANE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-435 |
| | § | |
| SIEMENS ENERGY INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Harriet Lane began working for Siemens Energy Inc. in October 2014 as a business-process specialist.  In October 2017, Siemens eliminated her position and spread her former duties across four other employees.  Throughout her time at Siemens, Lane lodged complaints against her supervisors, coworkers, and human resources personnel.  She complained about her supervisors asking about her working hours and requiring her to use paid time off for missed workdays.  She complained about her coworkers for informally criticizing her auditing work.  She complained about human resources personnel who reprimanded her for being confrontational.  In February 2017, Lane took leave under the Family Medical Leave Act.  When she returned from leave, she made a number of new complaints about her new supervisor and coworkers.  Towards the end of her tenure, she complained specifically of race and gender discrimination.  One coworker expressed the fear that Lane's continued complaints about him would put him at risk of getting fired.  Shortly after, he prepared an analysis showing that Lane's position required only 536 hours of work per year.  Siemens explained its decision to terminate Lane's position using that analysis, concluding that her position was not needed.

Lane sued Siemens for race and sex discrimination, a hostile work environment, and retaliation under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, *et seq.*, and for retaliation under Title VII and the Family and Medical Leave Act, 29 U.S.C. § 2612(a)(1)(D).  (Docket Entry No. 18).  Lane claims that she was not fired for legitimate reasons, but as a result of discrimination and retaliation for complaining about discriminatory employment practices and taking leave.  She also claims that she endured a hostile work environment.

After discovery, Siemens moved for summary judgment.  (Docket Entry No. 25, 33).  Siemens argues that Lane submitted no proof of race or sex discrimination; Siemens had legitimate, nondiscriminatory, nonretaliatory reasons for firing her; and Lane did not suffer a hostile work environment.

Based on the pleadings, the motions and responses, the record, and the applicable law, the court grants Siemens's motion for summary judgment on Lane's discrimination claims under Title VII and § 1981, on her hostile-work-environment claims under Title VII and § 1981, and on her retaliation claim under the Family and Medical Leave Act.  The court denies Siemens's motion for summary judgment on Lane's retaliation claims under Title VII and § 1981.  The reasons are explained in detail below.

## I.    Background

Lane began working for Siemens in October 2014 as a senior business-process specialist.  (Docket Entry No. 25-1 at 57, 59).  Her duties included internal auditing and working with Siemens's document-management system.  (*Id.* at 14).  Initially, her position was part of the business-excellence department at Siemens.  (Docket Entry No. 25-6 at 3).  In October 2016, Siemens cut the business-excellence department and made Lane's position part of the finance

department.  (Docket Entry No. 25-1 at 25, 27; Docket Entry No. 25-6 at 3).  Melissa King became Lane's supervisor.  (Docket Entry No. 25-1 at 25, 27; Docket Entry No. 25-6 at 3).

King sent a "refresher" email about Siemens's paid-time-off policy to her team, which included Lane.  (Docket Entry No 25-8 at 2).  The next day, King emailed Lane asking for her "normal business working schedule" so that King could "get a feel for what hours everyone works."  (*Id.* at 3).  Lane responded that she preferred working from "7:30a — 4:30a," but because she lived in Pearland, which required a long commute, she often did not make it into the office until "between 8a –9a."  (*Id.*).  Lane told King that she had to miss some days to care for her mother and to attend Toastmaster sessions.  (*Id.*).

The same day, Lane told King that she had three appointments the following day and would miss work.  (Docket Entry No. 25-10B at 12).  King told Lane that normally she would need to use her paid time off for doctor and school appointments, but that King would make an exception this time.  (*Id.* at 13).

Two days after this exchange, Lane called a meeting with King and Linda Hubbard, a human-resources manager at Siemens's Houston location.  (*Id.* at 14).  Lane told King and Hubbard that she could not get to work by 9:00 a.m. because of the long commute and because she had to drop her daughter at school.  (*Id.*).  Lane again raised her need to miss work and care for her mother one day each month.  (*Id.*).  Lane complained that King's emails asking about her schedule were "harassment" and created a "hostile work environment."  (*Id.*).

King and Hubbard reminded Lane that Siemens had a "fixed schedule" requiring employees to be present from 9:00 a.m. to 4:00 p.m.  (*Id.*).  They told Lane that they would ask about a program that would allow her to work from home.  (*Id.*).  They also reminded her about

the paid-time-off policy and told her that she could use intermittent Family and Medical Leave Act time to care for her mother.  (*Id.*).

The next day, King told Lane that upper management did not approve her request for a work-from-home program because her job description did not allow for it.  (*Id.* at 15).  In "an attempt to accommodate" her "personal situation," however, management offered to let Lane work a 32-hour workweek with Fridays off.  (*Id.*).  Lane asked for more information about the 32-hour workweek.  (*Id.*).  She also asked why her request to work from home was denied.  (*Id.* at 17).  King followed up with management.  King reported to Lane that management again decided that Lane's role did not allow her to work from home.  (*Id.* at 20).  King reiterated the 32-hour workweek option.  (*Id.*).  Lane's response was to ask who in management she could speak to about the decision.  (*Id.* at 21).

King and Lane exchanged several more emails.  King provided more detail about management's decision; Lane responded asked for more information; and Hubbard responded, copying Mark Shipley and Patrik Hols, both in managerial positions.  (*Id.* at 21–25).  Hubbard again gave Lane Siemens's additional reasons that they would not allow her to work from home, and again offered the 32-hour workweek and intermittent Family and Medical Leave Act time as options to help Lane with her "family needs."  (*Id.* at 26).  The record does not show that Lane pursued either option.

Roughly two months later, at the end of November 2016, King emailed Lane about a trip Lane was scheduled to take to Germany for company-funded audit training.  (*Id.* at 28).  King told Lane that Hols, the director of the finance department, no longer approved the trip because of the expense.  (*Id.*).  Lane called a meeting with King, Hols, and Hubbard to discuss the decision, which was eventually reversed.  (*Id.* at 29).

A week later, King set times to meet to discuss Lane's goals and expectations for 2017. (*Id.* at 31).  The meeting was supposed to take place in mid-December 2016.  (*Id.* at 31).  King asked Lane to provide her with a list of her duties in preparation for the meeting.  (*Id.* at 30).  The record does not show that Lane responded to the email or accepted any of the meeting invitations. (*Id.* at 30–32).  In her deposition, Lane testified that King was responsible for delaying the meeting. (Docket Entry 25-1 at 25; Docket Entry No. 25-9 at 3).

The meeting, finally held in mid-January 2017, was attended by King, Hols, and Lane. (Docket Entry No. 25-10B at 44).  They discussed complaints Lane had made to Hubbard and Hols that King was not giving her enough "guidance or direction."  (*Id.*).  In response, King had scheduled weekly meetings with Lane to give added guidance.  (*Id.* at 32, 44).  When King attempted to explain these weekly sessions, Lane became angry and left the room.  (*Id.* at 44; Docket Entry No. 25-9 at 3).

During and after this period, Lane was sending emails informing King that she would be missing parts of workdays.  (Docket Entry No. 25-10B at 34, 51–62).  She typically sent these emails the day before.  (*Id.* at 34, 58–60).  In response, King would ask Lane to use paid time off for the missed work time.  (*Id.* at 34).  Often there would be no further discussion, but in mid-December, Lane resisted when King asked her to use her paid time off for part of a holiday vacation.  (*Id.* at 35).  Lane claimed to have been working through lunches to save her paid time off, but she had not let King know.  (*Id.*).  Hols, Shipley, and Hubbard eventually had to intervene to reach a solution, allowing Lane to use paid time off from the following year for her vacation. (*Id.* at 35–43).

At the end of January 2017, Lane called Siemens's SafeCall hotline to complain that King was "harassing" her.  (Docket Entry No. 25-9 at 2).  As examples, Lane discussed King's email

asking for her working hours, their discussions about paid time off, her goals-and-expectations meeting, and her off-then-back-on trip to Germany.  (*Id.*).  Lane also complained that Siemens had "closed ranks and unfairly taken the side of" King.  (*Id.*).  Lane did not complain about different treatment based on her race or gender.  (*Id.*; Docket Entry No. 25-10 at 2).

Siemens assigned Patti Davis, a human-resources employee in Florida, to investigate Lane's claims of harassment.  (Docket Entry No. 25-10 at 2).  In February 2017, Davis flew to Houston for an in-person investigation.  (*Id.* at 2–3).  Davis interviewed Lane, King, and Hols. (*Id.* at 2–4).  Davis determined that Lane was neither harassed nor unfairly treated.  (*Id.* at 4). Instead, Davis concluded that Lane would not comply with Siemens's "generally applicable policies" and continued to violate them even after "counseling and warnings from King."  (*Id.*). Davis concluded that Lane considered each of King's attempts to enforce Siemens's policies as "a personal attack."  (*Id.*).  Davis found no other employees working with King who received more favorable treatment.  (*Id.* at 4–5).  Davis expressed concern that Lane was not working a full eight hours per day and was falsifying company records.  (Docket Entry No. 25-10C at 5).  Davis recommended a verbal warning and a performance-improvement plan.  (Docket Entry No. 25-10 at 5).

In mid-February, Davis, along with Hubbard, told Lane that she would receive a verbal warning letter signed by Davis.  (Docket Entry No. 25-10D at 2; Docket Entry No. 25-14; Docket Entry No. 25-6 at 4).  According to Davis's and Hubbard's notes, Lane became argumentative. (Docket Entry No. 25-10D at 2; Docket Entry No. 25-6 at 3).  Davis and Hubbard did not have the final documents for the verbal warning and performance-improvement plan, but they told Lane that she would receive the documents the next day.  (Docket Entry No. 25-6 at 5).  Lane did not

show up for work the next day, but instead requested to take leave under the Family and Medical Leave Act.  (*Id.*).

Lane was on leave from the end of February until May 2017.  (Docket Entry No. 25-1 at 13, 43, 45; Docket Entry No. 25-6 at 5).  While she was gone, her auditing duties were assigned to other members of the internal audit team.  (Docket Entry 25-1 at 13; Docket Entry 25-7 at 12).  When Lane returned, Donna Wilson had replaced King as Lane's supervisor.  (Docket Entry No. 25-1 at 43, 45).  Shortly after Lane's return, Wilson, Hols, Shipley, and Hubbard gave her the written verbal warning letter and placed her on a performance-improvement plan.  (Docket Entry No. 25-14, 25-15).  Lane refused to sign either document, instead noting on both that she felt she was being harassed and discriminated against.  (Docket Entry No. 25-14, 25-15).

The day after this meeting, Lane met with Wilson and Bill Piatt to coordinate her transition back to the auditing team.  (Docket Entry 25-7 at 5–6).  Lane was classified as a lead auditor.  (Docket Entry No. 25-1 at 36; Docket Entry No. 25-7 at 5).  Lane's document-management functions were transferred to another employee.  The record is disputed as to whether Lane voluntarily gave up these functions or they were taken from her.  In his deposition, Piatt testified that Lane agreed to give her document-management duties to another employee.  (Docket Entry No. 25-7 at 6).  Lane testified that the duties were "maliciously" transferred.  (Docket Entry No. 25-1 at 14; Docket Entry No. 25-19 at 2).

In July 2017, Lane made several complaints to Toni Horton, a human-resources employee, primarily about Wilson and Piatt.[1]  She complained that Wilson and Piatt were often together in

---

[1] Lane also complained to Horton about Kimberly Long and a fire drill in which she participated.  (Docket Entry No. 25-17 at 1).  During the fire drill, Lane was responsible for crossing names off the list of participants.  (*Id.*).  She gave the list to a coworker, Mary Moyer.  (*Id.*).  After the fire drill, Long sent Lane an email asking for the list but did not send a similar request to Moyer.  (*Id.*).  Lane complained that Long singled her out by not also emailing Moyer.  (*Id.*).

Wilson's office and stated that they were talking about Lane.  (Docket Entry No. 25-17 at 3).  Lane

complained about Wilson twice.  In late July, Lane met with Wilson about her paycheck and leave.

(Docket Entry No. 25-17 at 2).  Wilson told Lane that she did not have "control over payroll."

(*Id.*).  At some point during the meeting, Wilson called Lane "silly."  (*Id.*).  Lane complained to

Horton that Wilson had "called her a name."  (*Id.*).

A few weeks later, Lane complained to Horton that Wilson was treating her less favorably

than other employees.  (Docket Entry No. 25-18).  The incident Lane described was that Wilson

asked Lane how many audits were completed in 2016.  (*Id.*).  Lane responded by sending Wilson

the list of audits.  (*Id.*).  Wilson responded by again asking how many audits were completed in

2016.  (*Id.*).  Lane felt that Wilson was asking her to send what she had "already sent over."  (*Id.*).

Lane also felt that Wilson would talk to other employees instead of emailing them and complained

that Wilson had raised her voice during a meeting and accused Lane of being "confrontational."

(*Id.*).

During this same period, Lane repeatedly complained about Piatt.[2]  Lane first complained

about lunches for audit meetings.  (Docket Entry No. 25-17 at 2).  In the past, Lane had ordered

lunches for certain auditing meetings.  (*Id.*).  When she returned from her leave, Wilson told her

that company-funded lunches in audit meetings were no longer allowed.  (*Id.*).  Lane believed that

Piatt told Wilson to stop the lunches.  (*Id.*).

Lane also complained about Piatt making changes to process audits.  (*Id.* at 3).  While Lane

was on leave, Piatt was asked to begin performing process audits.  (Docket Entry No. 31-3).

Initially, he told Lane that these new types of audits were "informal" and did not need to be

---

[2] Lane had complained about Piatt once in the past.  In 2016, she complained that he was monitoring the
time she spent away from the office.  (Docket Entry No. 31-1 at 2).  Piatt had sent her one email asking
whether a supervisor had given Lane permission to work from home.  (*Id.*).

included on the auditing "database." (*Id.*). Piatt then found out that the audits were required to be included on the database and asked Lane to save them there. (*Id.*). Lane complained that Piatt used these process audits to "reprimand" her. (Docket Entry No. 25-17 at 3).

Lane also complained about client-satisfaction surveys that Piatt asked her and other auditors to send to clients. (Docket Entry No. 25-17 at 2). When Lane returned from leave, Piatt started requiring auditors to include a client-satisfaction survey with their audits. (Docket Entry No. 25-1 at 15–16; Docket Entry No. 31-3 at 3). Piatt asked Lane to draft the survey form. (Docket Entry No. 31-3 at 3). After the form was complete, auditors were required to send one to each of their audit clients so management could know "how all the auditors [were] doing." (*Id.*). Lane complained that Piatt created these surveys so clients would criticize her work.[3] (Docket Entry No. 25-1 at 15).

Lane also complained that Piatt asked for her input on a PowerPoint presentation. (Docket Entry No. 31-3 at 2). She complained that Piatt did not ask the other auditors because they were either new or had volunteered to work on audits on top of their primary duties. (*Id.*). Lane was the only person "that would have valued input" and an opinion that Piatt would respect. (*Id.*).

Lane also complained that her security badge was cancelled. (Docket Entry No. 25-19 at 2). She complained that Piatt was responsible for cancelling her badge while she was on leave, and she did not believe that this was normal practice. (*Id.*).

In September 2017, Siemens removed Lane from her performance-improvement plan because she had successfully completed the "actions required." (Docket Entry No. 25-20). She refused to sign the document. (*Id.*).

---

[3] Lane believed that Piatt only required her to send out these surveys, but there is no other evidence in the record on this topic. (Docket Entry No. 25-1 at 16).

Around this period, Wilson began to review the number of audit employees needed at the Houston Siemens location.  (Docket Entry No. 25-13 at 4, 10).  It is unclear if Wilson had a standing order to review this information or if Hols specifically asked her to do so.  (*Id.*).  Because Wilson was unfamiliar with auditing, she asked Piatt to analyze the auditing workloads at the Houston location.  (Docket Entry No. 25-21 at 2; Docket Entry No. 25-13 at 5).  Lane was the only full-time auditor there.  Piatt determined that Lane's job required only 536 hours of work each year, far fewer than Siemens paid Lane to work.  (Docket Entry No. 25-21 at 2).

Wilson submitted Piatt's analysis to Hols, who provided comments.  (Docket Entry No. 25-22 at 2).  Wilson then emailed Horton, asking permission to eliminate Lane's position because her "workload could be reorganized to the Quality Department without adding any additional headcount."  (*Id.*).  Wilson also noted that Siemens's Springfield location had recently been sold, further reducing the need for auditing.  (*Id.*).  Horton made some minor changes to Wilson's email and sent the recommendation to upper management, noting the cost of a severance package for Lane.  (Docket Entry No. 25-23 at 2, 3).

On October 13, 2017, Wilson and Horton terminated Lane's position and her job.  (Docket Entry No. 25-1 at 59).  Siemens did not replace her, but instead distributed her duties among several members of the internal-audit team.  (Docket Entry No. 25-13 at 12; Docket Entry No. 25-1 at 55).

The parties conducted discovery and submitted a large summary judgment record.  This record is examined under the applicable legal standards.

## II.    Summary Judgment

### A.    The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

*Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 610 (5th Cir. 2018) (quotations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'"  *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).  The moving party must demonstrate the absence of a genuine issue of material fact, but it need not need to negate the elements of the nonmovant's case.  *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017).  "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response."  *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "A party cannot defeat summary judgment with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019).  In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

### B.    The Summary Judgment Record

Siemens submitted the following summary judgment evidence:

- Lane's deposition (Docket Entry No. 25-1);

- Lane's electronic signature and acknowledgment form (Docket Entry No. 25-2);

- Siemens's harassment policies (Docket Entry No. 25-3);

- July 2016 emails between Lane, Hubbard, and Piatt (Docket Entry No. 25-4);

- July 2016 emails between Lane and Hubbard (Docket Entry No. 25-5);

- Hubbard's declaration (Docket Entry No. 25-6);

- Hubbard's notes from a meeting with Lane (Docket Entry No. 25-6A);

- Piatt's deposition (Docket Entry No. 25-7);

- October 2016 emails between Lane and King (Docket Entry No. 25-8);

- Lane's SafeCall report (Docket Entry No. 25-9);

- Davis's declaration (Docket Entry No. 25-10);

- Davis's February 2017 notes from her interview with Lane (Docket Entry No. 25-10A);

- King's report on Lane's behavior (Docket Entry No. 25-10B);

- A human resources report on Lane (Docket Entry No. 25-10C);

- Davis's February 2017 notes from her second interview with Lane (Docket Entry No. 25-10D);

- December 2016 emails between Lane, King, and Hols (Docket Entry No. 25-11);

- Hubbard's deposition (Docket Entry No. 25-12);

- Wilson's deposition (Docket Entry No. 25-13);

- Lane's written verbal warning (Docket Entry No. 25-14);

- Lane's performance-improvement plan (Docket Entry No. 25-15);

- Horton's deposition (Docket Entry No. 25-16);

- Horton's July 2017 notes from a meeting with Lane (Docket Entry No. 25-17);

- Horton's August 8, 2017 notes from a meeting with Lane (Docket Entry No. 25-18);

- Horton's August 15, 2017 notes from a meeting with Lane (Docket Entry No. 25-19);

- The removal of Lane's performance-improvement plan (Docket Entry No. 25-20);

- Piatt's internal auditing workload analysis (Docket Entry No. 25-21);

- Siemens's September 2017 email on Lane's termination (Docket Entry No. 25-22);

- Siemens's position elimination form (Docket Entry No. 25-23);

- Lane's expectations and goals for 2017 (Docket Entry No. 25-24);

- Irene Manrique's deposition (Docket Entry No. 25-25);

- Melissa Shovelski's deposition (Docket Entry No. 25-26); and

- Kathy DeGeorge's deposition (Docket Entry No. 25-27).

Lane submitted the following summary judgment evidence:

- Lane's declaration (Docket Entry No. 31-2);

- Horton's July 2017 notes from a meeting with Piatt (Docket Entry No. 31-3);

- Excerpts from DeGeorge's deposition (Docket Entry No. 31-4);

- Excerpts from Horton's deposition (Docket Entry No. 31-5);

- Excerpts from Piatt's deposition (Docket Entry No. 31-6);

- Excerpts from Wilson's deposition (Docket Entry No. 31-7);

- Piatt's notes on Lane (Docket Entry No. 31-8); and

- Siemens's answers to interrogatories (Docket Entry No. 31-9).

### III.   Analysis

#### A.   The Evidentiary Objections

Siemens objected to Horton's meeting notes, (Docket Entry No. 31-7 at 2), which Siemens seemingly produced to Lane during this litigation.  (Docket Entry No. 34).  Siemens argues that these notes are hearsay and were not properly authenticated.  (*Id.*).

These notes are not hearsay; they are opposing-party admissions under Federal Rule of Evidence 801(d).  The notes do not need to be authenticated at the summary-judgment stage; they only need to be "presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56. The notes also contain indicia of authentication because they are on a Siemens form document. *See Cunningham v. Burns*, No. 3:12-CV-1824, 2014 WL 4707391, at *5 (N.D. Tex. Sept. 22, 2014) ("The letter is sufficiently authenticated because it is on a letterhead from the [defendant]."). Siemens does not argue that these notes were fabricated or contain some other flaw.  *See Pryor v. MD Anderson Cancer Ctr.*, No. 10-CV-1623, 2012 WL 1038766, at *5 (S.D. Tex. Mar. 26, 2012) (sustaining an objection to summary-judgment evidence because it had "not been produced in discovery" and the defendant did not "concede" that the evidence was "maintained in its files"). At trial, these notes can be further authenticated through "the testimony of individuals familiar"

with them, like Horton or Piatt. *People's Capital & Leasing Corp. v. McClung*, No. 5:17-CV-484, 2018 WL 2996902, at *2 (W.D. Tex. May 4, 2018).

Siemens also objected to Lane's declaration, (Docket Entry No. 31-2), but the court did not rely on that declaration when reaching its decision.

Siemens's evidentiary objections, (Docket Entry No. 34), are overruled.

### B.  The Sex and Race Discrimination Claims

The requirements for discrimination claims are "essentially the same for individual actions brought under" § 1981 and Title VII. *Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (internal quotation marks and citation omitted).  Employment discrimination under both can be proved "by either direct or circumstantial evidence." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  Evidence is direct if it would prove the fact in question "without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).  If no direct evidence exists, the court uses the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether summary judgment is appropriate. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).

The *McDonnell Douglas* standard is well settled:

> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

*Id.* at 317 (citations omitted).

The elements of a prima facie showing of discrimination are that the plaintiff "(1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class or treated less favorably than other similarity-situated employees who were not in her protected class." *Harville v. City of Houston, Miss.*, 945 F.3d 870, 875 (5th Cir. 2019).

The defendant's burden of articulating a legitimate, nondiscriminatory reason for its adverse employment action is a burden of production, not persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 507 (quotation marks omitted). The defendant must proffer "admissible evidence, . . . which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.*

If the employer meets its burden, the prima facie case dissolves, and the burden shifts back to the plaintiff to raise a factual dispute material to determining either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

### 1.      Direct Evidence

Direct evidence is evidence that "proves the fact [of discrimination] without inference or presumption." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 992 (5th Cir. 2005). If a statement shows "on its face that an improper criterion served as a basis . . . for [an] adverse employment action," it is "direct evidence of discrimination." *Id.* at 993. Comments can serve as direct evidence of sex discrimination when they are: "(1) related to gender; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 187 (5th Cir. 2018) (internal quotation marks and citation omitted). If a comment does not satisfy any of these four criteria, it is a stray remark and not evidence of discriminatory intent. *Id.* The "ultimate focus" of this inquiry is "whether the comments prove, without inference or presumption, that [gender] was *a* basis in employment decisions." *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 476 (5th Cir. 2015). Statements that can be equally applied to both sexes do not usually serve as direct evidence of sex discrimination. *Herster*, 887 F.3d at 187.

Fifth Circuit cases are illustrative. In *Herster*, the defendant called the plaintiff a "trailing spouse that takes care of her children" and said that she was acting like a "princess." 887 F.3d at 186. The defendant also called another woman a trailing spouse. *Id.* The Fifth Circuit held that these statements did not amount to "direct evidence of discrimination" because "an inference [was required] to reach the conclusion that [the plaintiff's] gender served as basis for her compensation." *Id.*

In *Krystek v. University of Southern Mississippi*, an interim dean of the defendant university commented that "[t]here are different standards for males and females." 164 F.3d 251,

254 (5th Cir. 1999).  The court held that this comment was a stray remark because it was made two years before the tenure denial at issue, the interim dean did not participate in the tenure decision, and the comment represented only the interim dean's perception of how tenure decisions were made at that time.  *Id.* at 256.

In *American Real Estate Corp. v. Dore*, the defendant stated that "men are not as detail oriented as women," a statement the male plaintiff argued was direct evidence of discrimination. 216 F.3d 1079, 2000 WL 729067, at *2 (5th Cir. 2000).  The court disagreed because "the statement was made during the one conversation [the defendant] had with [the plaintiff] and was at best, a stray remark."  *Id.*

By contrast, in *Portis v. First National Bank of New Albany*, the plaintiff discussed several occasions when her supervisor told her that she "wouldn't be worth as much as the men would be to the bank" and that "she would be paid less because she was a woman."  34 F.3d 325, 329 (5th Cir. 1994).  The court held that these statements directly evidenced discrimination because no inference was required to conclude that the plaintiff was treated differently due to her sex.  *Id.* Similarly, in *Vance v. Union Planters Corp.*, the court held that a hiring official's remark that he wanted a "mature man" as bank president was direct evidence of sex discrimination.  209 F.3d 438, 442 (5th Cir. 2000).

Lane argues that she submitted direct evidence of sex discrimination based on three comments from the deposition of Kathy DeGeorge, a Siemens employee in the quality department. (Docket Entry No. 25-27).  First, DeGeorge overheard Piatt make "derogatory comments regarding women."  (*Id.* at 5).  Second, Piatt called DeGeorge "confrontational and insubordinate" when she disagreed with him.  (*Id.*).  Third, another employee, Kimberly Long, told DeGeorge that Piatt also called Long "confrontational" when she disagreed with him.  (*Id.* at 6).

18

These comments are not direct evidence of discrimination. Lane provided no detail about Piatt's "derogatory comments regarding women," and DeGeorge did not elaborate on these comments in her deposition. Nor did Lane point to evidence connecting these comments to her or the decision to terminate her position. *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 318 (5th Cir. 2005) ("[T]here is no evidence in the record that establishes that the remarks were related to the decision to terminate [the plaintiff]."); *Wilson v. KRBE Radio, Inc.*, No. 04-CV-2641, 2005 WL 1155082, at *8 (S.D. Tex. May 4, 2005) ("Plaintiff fails to present any evidence showing that the gender-based comments attributed to [his supervisors] were directed to him, made about him, or related to the decision to discharge him."). The record does not show when these comments were made. Without more, these comments have "no connection" to Lane's termination and "cannot create a fact issue regarding discriminatory intent." *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999); *see also Ihsan v. Weatherford U.S., LP*, No. 17-CV-2546, 2019 WL 2191141, at *7 (S.D. Tex. May 21, 2019) ("[P]laintiff has not cited any evidence capable of establishing that the comments attributed to [his supervisor] were related to the decision to terminate his employment.").

Nor do the second and third comments serve as direct evidence of discrimination. These statements could apply "irrespective" of Lane's sex. *Herster*, 887 F.3d at 187; *Matthews v. Geico*, 09-CV-609, 2010 WL 1644713, at *12 (S.D. Tex. Apr. 23, 2010) ("These remarks, without more, do not suggest a bias or animosity towards working mothers or female caregivers, as they could likewise apply to working fathers or male caregivers."). And Lane did not point to record evidence connecting these statements to her termination. *See Scales*, 181 F.3d at 712; *see also Matthews v. Geico*, No. 09-CV-609, 2010 WL 1644713, at *12 (S.D. Tex. Apr. 23, 2010) ("[N]o evidence has been presented in this case to establish that any of the [supervisor's] remarks were related to [the

plaintiff's] demotion or resignation in any way.").  Based solely on these comments, the court would have to make an "inferential leap" to conclude that Lane was fired "because of her gender." *Herster*, 887 F.3d at 186.

Lane cannot avoid summary judgment by relying on direct evidence of discrimination.

### 2.    Circumstantial Evidence

A prima facie case of discrimination using circumstantial evidence requires the plaintiff to point to evidence that she "was replaced by someone outside of her protected class or treated less favorably than other similarity-situated employees who were not in her protected class." *Harville*, 945 F.3d at 875.  Lane did not submit evidence to prove either point.

The record shows that Siemens eliminated Lane's position and redistributed her duties among four other employees.  Lane was not replaced by someone outside of her protected classes. *See Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294–95 (5th Cir. 2014) ("We have held that an employee has not been 'replaced' . . . when his former duties are distributed among other co-workers."); *Plumbar v. S. Tex. Coll. of Law*, No. 16-CV-129, 2017 WL 2844030, at *5 (S.D. Tex. July 3, 2017) ("[The plaintiff] cannot show that he was 'replaced' by someone outside the protected class when the fraction of his duties that remained were distributed among several coworkers.").

Second, Lane did not point to, or provide evidence about, "similarity situated employees" who were outside her protected classes and treated more favorably.  She does not identify an employee who had similar responsibilities, the same supervisor, or a comparable disciplinary record that ended in a performance-improvement plan.  *See, e.g.*, *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the

same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."); *see also Bryan v. Chertoff*, 217 F. App'x 289, 292 (5th Cir. 2007) (noting that the plaintiff failed to highlight "any individuals who were similarly situated, i.e., had the same disciplinary records as [the plaintiff]"). Because Lane did not identify a similarly situated employee, she did not make a prima facie showing of sex or race discrimination.   Without a prima facie showing, her sex and race discrimination claims must fail.  *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (upholding summary judgment because the plaintiff "failed to identify a single" similarly situated employee); *Ellini v. Ameriprise Fin., Inc.*, 881 F. Supp. 2d 813, 820 (S.D. Tex. 2012) ("Nor is there any evidence in the record to support Plaintiff's contention that he was treated less favorably than similarly situated individuals outside of his protected class.").

The court grants Siemens's motion for summary judgment on Lane's sex and race discrimination claims under Title VII and § 1981.

### C.    The Hostile-Work-Environment Claims

Lane also sued Siemens for a hostile work environment based on her race and sex under Title VII and based on her race under § 1981.  The same analysis applies to both claims.[4]  *See Mendoza v. Bell Helicopter*, 548 F. App'x 127, 128 (5th Cir. 2013).  To raise a triable issue on a hostile-work-environment claim, a plaintiff must point to evidence showing that she: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [race or sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in

---

[4] In this case, the only relevant difference between § 1981 and Title VII is that § 1981 prohibits a hostile work environment based on race but not sex.  *Bobo v. ITT, Continental Baking Co.*, 662 F.2d 340, 342–45 (5th Cir. 1981).

question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).  Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Collier v. Dall. Cty. Hosp. Dist.*, 805 F. App'x 306, 310 (5th Cir. 2020) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).  "[A]ll of the circumstances must be taken into consideration," *Collier*, 805 F. App'x at 310, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Hernandez*, 670 F.3d at 651.  A hostile work environment requires "more than rude or offensive comments [or] teasing." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004).  The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (citation omitted).

In *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 872–74 (5th Cir. 1999), the court held that the plaintiff did not create a genuine issue of material fact on her hostile-work-environment claim even though a male coworker had made what were clearly sexually offensive comments and gestures.  The plaintiff testified that this coworker never propositioned her or asked her out, and that they had a friendly relationship. *Id.* at 872.  The conduct the plaintiff complained of took place over a period of almost two years. *Id.*  The court held that, while the coworker's

conduct was "boorish and offensive," it was infrequent, the plaintiff was not physically threatened, and the conduct did not interfere unreasonably with her work performance. *Id.* at 874.

By contrast, in *Donaldson v. CDB Inc.*, 335 F. App'x 494, 502 (5th Cir. 2009), the Fifth Circuit held that the plaintiff presented enough evidence to survive summary judgment. For five months, the plaintiff's manager had frequently made "sexually-suggestive comments [about] her physical appearance and her relationship with her boyfriend." *Id.* He told her that "he could say to her anything he pleased, 'so long as I don't touch.'" *Id.* The manager called the plaintiff "stupid" and "ignorant about the requirements of her job," and he "repeatedly [drove] past, [appeared] at, and [telephoned], the store where she received assistant-manager training." *Id.* Together, these facts created "a genuine issue of material fact for whether [the plaintiff] was the victim of an abusive working environment." *Id.* Similarly, in *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771–72 (5th Cir. 2009), the Fifth Circuit upheld a plaintiff's jury verdict because the plaintiff's coworker had repeatedly and frequently "propositioned her, and commented on her physical appearance and dress," conduct that took place "over only 32 days." *Id.* The record also contained "evidence of repeated bodily contact." *Id.*

The record shows that Lane has not raised a genuine factual dispute material to her hostile-work-environment claim.[5] Lane complained about excessive monitoring by King, her Germany trip almost being cancelled, the formal and informal reprimands she received for violating Siemens's paid-time-off policies, the performance-improvement plan, being emailed instead of spoken to, the removal of her document-management duties, no longer being able to order lunches for audit training, being called "silly," and Piatt's criticism of her auditing. *See supra* at 2–10.

---

[5] Lane did not respond to Siemens's motion for summary judgment on the hostile-work-environment claim. *See Criner v. Tex.-N.M. Power Co.*, 470 F. App'x 364, 366 (5th Cir. 2012) (affirming the district court's finding that the plaintiff abandoned claims "because [the plaintiff] did not address them in her response to the [defendant]'s motion for summary judgment").

Lane also points to three statements attributed to Piatt.  None of these actions rises to the level of a hostile work environment.  Monitoring, reprimands, requirements to use paid time off, removal of privileges and duties, unfriendly coworkers, and criticism all fall short of what the Fifth Circuit finds sufficient to support an inference of a hostile work environment.[6]  Isolated comments, even rude or insensitive ones, are generally not harassment.  *See, e.g.*, *Hiner v. McHugh*, 546 F. App'x 401, 408 (5th Cir. 2013) (isolated comments are not harassment); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (same).

Even taking the facts together to see their "cumulative effect," *Donaldson*, 335 F. App'x at 503, Lane has not pointed to record evidence that supports an inference of a hostile work environment.  For example, in *Credeur v. Louisiana Through Office of Attorney Gen.*, 860 F.3d 785, 796 (5th Cir. 2017), the plaintiff complained about treatment similar to Lane's.  The plaintiff claimed that she was "ordered to attend [a] meeting," required to "work at least three to four hours in the office and to not work from home," criticized for "her work performance," threatened with "termination," asked "to sign false payroll documents," and "forced to take leave without pay" rather than leave under the Family and Medical Leave Act.  *Id.*  The court held that this "conduct" was "certainly not harassment that is sufficiently severe or pervasive to create a hostile work environment."  *Id.*

---

[6] *See, e.g.*, *Kumar v. Shinseki*, 495 F. App'x 541, 543 (5th Cir. 2012) (criticism in the workplace and threats to employee's job were not harassment); *Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (requirement "to use leave time to compensate for arriving late," "careful monitoring of job performance," and "a decision not to grant a discretionary award" were not harassment); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (there was no basis to find harassment when the employer followed its detailed policy in disciplining an employee and gave her several warnings to correct her missteps); *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) ("selective enforcement of a time and attendance policy" is not harassment); *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 858 (5th Cir. 2009) ("internal investigation and . . . transfer" are not harassment); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998) ("[S]ome workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense."); *see also Rowe v. Jewell*, 88 F. Supp. 3d 647, 675 (E.D. La. 2015) (collecting cases).

Similarly, in *Ellis*, 246 F. App'x at 871, the plaintiff's coworkers made several statements she considered harassing. *Id.* Her boss also denied the plaintiff a "performance award," gave her "less favorable work assignments," delayed "forwarding her pay stubs, W–2 form, and workers' compensation form," "closely monitored her time and attendance," and "required her to use leave time to compensate for arriving late, [even though] the supervisor did not require another employee to follow the same procedure." *Id.* These facts did not "support a claim for hostile work environment." *Id.*

As in *Credeur* and *Ellis*, Lane's complaints center on workplace conduct does not support a hostile work environment claim. While she has shown that she has a subjective belief that she faced a hostile work environment, she has not pointed to record evidence supporting an inference that her workplace environment was objectively hostile. *Mitchell v. Snow*, 326 F. App'x 852, 857 (5th Cir. 2009) (a subjective belief of harassment is not enough to preclude summary judgment).

The court grants Siemens's motion for summary judgment on Lane's hostile-work-environment claims under Title VII and § 1981.

### D.    The Retaliation Claims

Lane also sued Siemens for retaliation under Title VII and § 1981. The same analysis applies to both claims. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). To make a prima facie showing of retaliation, the plaintiff must point to evidence that: "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) [there is] a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the plaintiff makes this showing, "the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." *McCoy v. City of Shreveport*,

492 F.3d 551, 557 (5th Cir. 2007).  If the employer meets this burden of production, "the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason."  *Aryain*, 534 F.3d at 484.

### 1.    The Prima Facie Case

Lane made a prima facie showing of retaliation.  First, she participated in protected activity.  A plaintiff engages in activity protected by Title VII when she opposes "any practice made an unlawful employment practice by Title VII" or makes "a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under Title VII."  *Dixon v. Moore Wallace, Inc.*, 236 F. App'x 936, 937 (5th Cir. 2007); *see also* 42 U.S.C. § 2000e–3(a).  For purposes of Title VII, "vague complaints" that do not refer to "an unlawful employment practice" are not "protected activity."  *Davis*, 448 F. App'x at 493.

Two of Lane's complaints qualify as protected activity under Title VII.  On May 24, 2017, after returning from FMLA leave, Lane received a verbal warning and was placed on a performance-improvement plan.  (Docket Entry No. 25-14; Docket Entry No. 25-15).  When presented with these documents, Lane refused to sign them.  (Docket Entry No. 25-14; Docket Entry No. 25-15).  On the bottom of her performance-improvement plan, she wrote that she felt she was "being discriminated against and targeted based on [her] race, age, and gender."  (Docket Entry No. 25-15 at 3).

Her August 15 complaint to Horton that she was discriminated against based on her race is similar.  (Docket Entry No. 25-19 at 2).  Lane complained that she was "singled out" because she was not copied on an email, her entrance keycard was cancelled while she was away on leave, and her management-system duties were taken away.  (*Id.*).  She identified Wilson and Piatt as the people arguably responsible.  (*Id.*; Docket Entry No. 31-8 at 5; Docket Entry No. 25-13 at 10).

Because she specifically mentioned racial discrimination in her May 24 and August 15 complaints, both qualify as protected activity under Title VII. *See Moore*, 150 F. App'x at 319 ("[The plaintiff] . . . was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII.").

Lane also complained on July 21 and August 8, 2017, but neither complaint mentioned race or sex discrimination. In her July 21 meeting with Horton, she complained that Piatt bullied her and created a "hostile work environment." (Docket Entry No. 25-17 at 2–3). In her August 8 complaint, she mentioned the word "discrimination," but she did not mention the basis of the discrimination. (Docket Entry No. 25-18 at 2). Nor did she identify behavior that would qualify as discrimination. (*Id.* at 2–3). She complained about having to resend an email, receiving criticism in a meeting, and feeling "undermined" by Piatt, but she did not claim that these were examples of discrimination. (*Id.*). Because she did not complain about race or sex discrimination on July 21 or August 8, neither complaint qualifies as protected activity under Title VII. *See Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not protected activity."); *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on a retaliation claim when the plaintiff had not "specifically complained of racial or sexual harassment, only harassment"). Lane may rely only on her May 24 and August 15 complaints.

Lane's firing is an adverse employment decision. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (termination qualifies as an adverse employment action). Lane focuses solely on the termination in her briefs. (Docket Entry No. 31 at 17–21). No other actions qualified as adverse employment decisions. For an adverse decision to be actionable, the decision must occur

after the plaintiff's protected activity.  *See Davis*, 448 F. App'x at 494 ("Because the protected activity occurred after the adverse employment action at issue, [the plaintiff] cannot demonstrate causation.").  Lane's May 24 complaint is the first complaint that qualifies as protected activity under Title VII.  Actions before then are not adverse decisions for retaliation purposes.

None of the actions after May 24 Lane complained about, besides her termination, qualify as adverse employment decisions.  She complained about a fire drill, the verbal reprimand and performance-improvement plan she received, her document-management duties being taken away, being called silly, email requests from Wilson, criticism from Piatt on her auditing, and the requirement that she send client surveys with her audits.  *See supra* at 7–10.  None of these actions are adverse employment decisions.  *See King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation."); *see also Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (criticism, oral threats, abusive remarks, and threats of termination did not rise to the level of adverse employment action).

Lane showed a causal link between her complaints and her termination.  It is undisputed that Wilson knew about Lane's May 24 complaint, because Wilson was in the meeting when Lane received her performance-improvement plan.  (Docket Entry No. 25-15 at 3).  Wilson's signature is on the plan, and she testified in her deposition that she attended the meeting.  (*Id.*; Docket Entry No. 25-13 at 7).  Wilson knew about Lane's complaint less than four months before presenting Piatt's analysis recommending eliminating Lane's job to upper management.  (Docket Entry No. 25-22).  Wilson's knowledge of the May 24 complaint, combined with the short time between the May 24 complaint and Lane's firing, sufficiently shows causation at this stage of the case.  *See*

*Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("[A] time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." (internal quotation marks omitted)).

Lane also presented evidence that her August 15 complaint came close in time to Piatt's analysis, which led to her termination.  Piatt's internal auditing analysis was only a few days after her August 15 complaint.  *See Stroud v. BMC Software, Inc.*, No. 07-20779, 2008 WL 2325639, at *6 (5th Cir. June 6, 2008) ("[A] fifteen-day lapse [is] sufficiently close to support an inference of causation." (citing *Ware v. CLECO Power LLC*, 90 F. App'x 705, 708 (5th Cir. 2004))); *Richardson v. Prairie Opportunity, Inc.*, 470 F. App'x 282, 287 (5th Cir. 2012) ("[T]his less than two-month span between the protected activity and the adverse action is sufficient 'temporal proximity' for a prima facie showing of causation.").  Wilson forwarded Piatt's analysis to Horton on August 25, 2017, ten days after Lane's August 15 complaint.  (Docket Entry No. 25-22). Viewing the disputed facts in Lane's favor, her complaint came shortly before Piatt's analysis began.

The record also shows that Piatt knew about at least some of Lane's complaints against him.  (Docket Entry No. 31 at 19).  As of July 25, 2017, Piatt knew of general complaints about him "harassing" Lane, and Piatt was expecting additional complaints that he feared would get him fired.  (Docket Entry No. 31-7 at 2).  Lane pointed to evidence that Wilson knew about Lane's May 24 complaint; Piatt knew generally about Lane's complaints and was expecting her to complain about him again; and Piatt's analysis that Lane was a redundant employee began within days of Lane's August 15 complaint.  These facts are sufficient to make a prima face causation showing.

Because Lane established a prima facie case of discrimination, Siemens must show a legitimate, nonretaliatory reason for firing Lane.  *McCoy*, 492 F.3d at 557.

### 2. Legitimate, Nonretaliatory Reason

According to Piatt's analysis, Lane's position required only 536 hours per year to complete. (Docket Entry No. 25-21 at 2).  Those hours could be spread across other audit employees, (Docket Entry No. 25-1 at 55), and Siemens would not have to pay them extra for taking on auditing duties. (Docket Entry No. 25-7 at 11).  In Lane's deposition, she was presented with Piatt's analysis.  She testified that she had no reason to believe that the underlying facts were false.  (Docket Entry No. 25-1 at 55–57).  For example, she did not argue that she was required to complete more than "7 process audits" and "7 internal audits" per year.  (Docket Entry No. 25-21 at 2).  She merely argued that someone besides her should have been fired.  (Docket Entry No. 25-1 at 55–57). Eliminating Lane's position because she completed what should only take 536 hours of work is a legitimate, nonretaliatory reason for firing her.  *See Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) ("Elimination of an employee's position as a result of a reorganization or a reduction-in-force is a legitimate, non-retaliatory reason for the employee's termination."); *Cooper v. Dall. Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008) ("reining in . . . spending" was a "legitimate, non-retaliatory reason" for an employment decision).

### 3. Pretext

Because Siemens presented a legitimate reason for firing Lane, she must point to evidence that Siemens's reason for firing her was a pretext for retaliation.  *Aryain*, 534 F.3d at 484.  This requires evidence showing that she would not have been fired "but for" the employer's retaliatory motives.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013).  To avoid summary judgment, the plaintiff must show a "substantial" conflict in the evidence as to whether the

30

employer would have fired the employee but for her protected activity. *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996).

While Lane did not challenge any of the facts underlying Piatt's analysis, she presented evidence raising substantial conflict on Siemens's reasons for firing her. These conflicts require credibility judgments to resolve. If believed by a jury, the present record contains enough evidence to allow a reasonable factfinder to conclude that the analysis underlying Lane's termination was pretext for retaliation.[7]

Wilson and Piatt both played a role in Lane's termination. (Docket Entry No. 31-8 at 5; Docket Entry No. 25-13 at 10). Piatt knew about at least some of Lane's complaints. (Docket Entry No. 31 at 19). It is unclear if Piatt knew about Lane's May 24 or August 15 complaints about race and sex discrimination. Piatt's contemporaneous notes do not show awareness of these complaints. (Docket Entry No. 31-7 at 2). Horton's notes from her July 25, 2017, meeting with Piatt also fail to mention any discussion of race or sex discrimination. (Docket Entry No. 31-2). In his deposition, Piatt testified that he did not know that Lane complained about race or sex discrimination. (Docket Entry No. 25-7 at 7, 10, 12).

But the record shows that, as of July 25, 2017, Piatt knew of Lane's general complaints about him "harassing" her. (Docket Entry No. 31-7 at 2). Horton's notes after a meeting with Piatt show that he was expecting "another complaint" and his feeling that Lane's problems with him might be "racially motivated." (Docket Entry No. 31-2 at 3). Piatt's notes confirm that he was worried that Lane was trying to get him fired. (Docket Entry No. 31-2 at 3; Docket Entry 31-

---

[7] It does not matter that Lane's discrimination claim failed. A successful retaliation claim does not require a successful discrimination claim. Retaliation claims are meant to ensure that employees can call attention to employment practices they perceive as discriminatory without suffering adverse employment actions, regardless of whether those practices are ultimately deemed discriminatory. *See Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 336 (5th Cir. 2014) (affirming summary judgment on a discrimination claim but reversing summary judgment on a retaliation claim).

7 at 2).  Horton's notes also show that Piatt felt that either he or Lane would be fired.  (Docket

Entry No. 31-7 at 2).  Piatt's analysis came within days of Lane's August 15 complaint to Horton.

In her deposition, Wilson testified that Piatt "initiated the analysis" that led to Lane's termination.

(Docket Entry No. 25-13 at 10).

There is also some conflict in Siemens's explanation for terminating Lane's position.

Siemens suggests that Lane's position was no longer required because Siemens sold its Springfield

location.  (Docket Entry No. 25-22, 25-23; Docket Entry No. 25-1 at 53–54).  Without the

Springfield location, Lane did not have enough auditing work to justify a full-time position.  (*Id.*).

But Lane testified that she had not performed audits for the Springfield location since June or July

2016.  (Docket Entry No. 25-1 at 53–54).  It is unclear why the number of hours required for

Lane's position would drop because the Springfield facility, which she did not do audit work for,

was sold.

The present record precludes this court from finding that, as a matter of law, there was no

retaliation.  There is evidence that Piatt knew of Lane's prior complaints and feared that Lane was

going to make a "racially motivated" complaint against him that could get him fired.  *See Zamora*

*v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015) ("[A]t the time that [the plaintiff's]

supervisors submitted their statements to Internal Affairs, each was well aware that [the plaintiff]

had joined [a] discrimination suit."); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir.

2003) ("[T]o establish the causation prong of a retaliation claim, the employee should demonstrate

that the employer knew about the employee's protected activity"); *cf. Hague*, 560 F. App'x at 337

(reversing a summary judgment granted on pretext grounds when the plaintiff's supervisor referred

to the plaintiff's complaint about him when discussing her firing).  Piatt believed that either he or

Lane would be fired. *Cf. Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019)

(reversing a grant of summary judgment when, among other things, the defendant could suffer adverse consequences from the plaintiff's complaint).  Piatt then completed an analysis concluding that Lane's position was unnecessary.  He did this within days of Lane complaining about racial discrimination.  *See Shackelford*, 190 F.3d at 409 ("The combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment.").  Upper management fired Lane based on Piatt's analysis.[8]  *Zamora*, 798 F.3d at 333 (finding but-for causation when the plaintiff's supervisors recommended that the plaintiff be disciplined out of retaliation and the recommended discipline was adopted).  Drawing all inferences in favor of Lane, on the present record genuine factual disputes material to determining Lane's retaliation claim preclude summary judgment.

The court denies Siemens's motion for summary judgment on Lane's retaliation claim under Title VII and § 1981.

### E.    The Family and Medical Leave Act Retaliation Claim

Lane also sued Siemens for retaliation under the Family and Medical Leave Act.  The Act protects employees who need to take leave to address health and medical issues. In any 12-month period, an employee is entitled to 12 weeks of leave for, among other things, "a serious health condition that makes the employee unable to perform the functions" of the employee's job.  29

---

[8] The Fifth Circuit has held that an employee's retaliatory animus can be attributed to upper management if the employee's actions proximately caused the plaintiff's termination.  *See Richardson v. Prairie Opportunity, Inc.*, 470 F. App'x 282, 284 (5th Cir. 2012) ("The question thus becomes whether the board's decision to terminate [the plaintiff] was tainted by [his supervisor's] alleged animus—i.e., whether the board acted as her 'cat's paw.'" (quoting *Long*, 88 F.3d at 308)); *Zamora*, 798 F.3d at 332 ("If the supervisor is motivated by retaliatory animus, then the employer has violated Title VII."); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 418–19 (2011) ("When a decision to fire is made with no unlawful animus on the part of the firing agent, but partly on the basis of a report prompted (unbeknownst to that agent) by discrimination, discrimination might perhaps be called a 'factor' or a 'causal factor' in the decision.").

U.S.C. § 2612(a)(1)(D).  Employers may not retaliate against employees who take leave under the Act.  *Id.* § 2615(a).

As with retaliation claims under Title VII, retaliation claims under the Act "are analyzed under the *McDonnell Douglas* burden-shifting framework."  *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).  To make a prima facie showing for Family and Medical Leave Act retaliation, an employee must show that: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) . . . the adverse decision was made because he sought protection under the FMLA."  *Acker v. Gen. Motors, LLC*, 853 F.3d 784, 790 (5th Cir. 2017) (internal quotation marks omitted) (quoting *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006)).  This requires a "causal link between the FMLA-protected activity and the adverse action."  *Acker*, 853 F.3d at 790 (internal quotation marks and quotation marks omitted).

If the plaintiff makes this showing, the defendant must articulate a legitimate, nonretaliatory reason for terminating the plaintiff.  *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390–91 (5th Cir. 2013).  The plaintiff must then point to record evidence to "create a genuine issue of fact that [the defendant's nonretaliatory] reasons, although true, are only some of the reasons for its conduct, another of which was [retaliation]."  *Id.* at 391.

Lane makes a prima facie showing of Family and Medical Leave Act protected activity and an adverse action.  She has not shown that her termination would not have occurred but for her leave.  Unlike her claims for retaliation under Title VII and § 1981, she has not pointed to evidence showing that her leave was a factor that motivated Siemens to fire her.  Besides her subjective belief, the only evidence of retaliation for her leave is the temporal proximity of her leave and her job termination.  (Docket Entry No. 31 at 22).  The timing is not enough to make the

necessary showing that her leave was a motivating factor or but-for cause of Siemens's decision to fire her.[9]  *See Thompson v. MedSynergies, Inc.*, No. 3:16-CV-2797, 2018 WL 4076480, at *4 (N.D. Tex. May 31, 2018) (a "personal well-held belief" and "close temporal proximity" are not enough to show a motivating factor); *Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 560 (S.D. Tex. 2014) (temporal proximity is enough for the plaintiff's prima facie case, but not enough for a motivating factor so as to preclude summary judgment); *Skelton v. Gold's Holding Corp.*, No. 12-CV-1183, 2013 WL 12106888, at *29 (W.D. Tex. Dec. 30, 2013) (temporal proximity of "a few weeks" is not enough for a motivating factor).  Timing, on its own, is especially insufficient in this case because Siemens offered Lane leave to accommodate her family situation.  (Docket Entry No. 25-10B at 21–26).  Without more evidence, Lane cannot sustain her Family and Medical Leave Act retaliation claim.

The court grants Siemens's motion for summary judgment on Lane's retaliation claim under the Family and Medical Leave Act.

---

[9] The Fifth Circuit has not determined whether the higher but-for-causation standard of a Title-VII-retaliation claim always applies to a FMLA-retaliation claim.  *Wheat*, 811 F.3d at 706 ("Neither this Court, nor the Supreme Court, has decided whether the heightened 'but for' causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims."); *Harrelson v. Lufkin Indus., Inc.*, 614 F. App'x 761, 765 (5th Cir. 2015) ("We have yet to decide whether *Nassar* applies to the FMLA context."); *Castay v. Ochsner Clinic Found.*, 604 F. App'x 355, 356 (5th Cir. 2015) ("Because we concluded that the plaintiff's claim in that case would fail under either [Title VII or FMLA] standard, we did not decide whether the 'but for' causation standard should apply in FMLA retaliation cases."); *Ion*, 731 F.3d at 390 ("We emphasize that we need not, and do not, decide whether *Nassar*'s analytical approach applies to FMLA-retaliation claims and, if so, whether it requires a plaintiff to prove but-for causation.").  But it recently suggested that district courts may use "the but-for causation standard for FMLA retaliation claims."  *Adams v. Mem'l Hermann*, No. 19-20651, 2020 WL 5103861, at *7 (5th Cir. Aug. 31, 2020).  District courts use the motivating-factor analysis when the "court has before it substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action."  *Id.*  (internal citation omitted).  Choosing the relevant standard is not necessary in this case because Lane fails under both.  Even when Title VII retaliation claims used the lesser motivating-factor standard, a plaintiff could not survive summary judgment with only evidence of timing.  *See Fullen v. Galveston Indep. Sch. Dist.*, 564 F. Supp. 2d 719, 737 (S.D. Tex. 2008).

**IV.      Conclusion**

Siemens's motion for summary judgment on Lane's discrimination claims under § 1981 and Title VII, hostile-work-environment claims under § 1981 and Title VII, and retaliation under the Family and Medical Leave Act is granted.  (Docket Entry No. 25).  Siemens's motion for summary judgment on Lane's retaliation claims under § 1981 and Title VII is denied.

SIGNED on October 2, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

36